# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT M. DUNCAN, | : | |
| | : | |
| Plaintiff, | : | K20M-11-022 JJC |
| | : | |
| v. | : | |
| | : | |
| SHAWN M. GARVIN, in his official | : | |
| capacity, and DELAWARE | : | |
| DEPARTMENT OF NATURAL | : | |
| RESOURCES AND | : | |
| ENVIRONMENTAL CONTROL, | : | |
| an agency of the executive branch of | : | |
| the State of Delaware, | : | |
| | : | |
| Defendants. | : | |

Submitted: April 9, 2024
Decided: July 31, 2024

## MEMORANDUM OPINION & ORDER

*Motion for Reconsideration of Commissioner's Order on Plaintiff's Motion to Amend –* **ADOPTED,** *in part.*

Patrick C. Gallagher, Esquire, and Courtney R. Prinski, Esquire, Jacobs & Crumplar, P.A., Wilmington, Delaware, *Attorneys for the Plaintiff.*

Kayli H. Spialter, Deputy Attorney General, State of Delaware Department of Justice, Wilmington, Delaware, *Attorney for the Defendant.*

**CLARK, R.J.**

Plaintiff Robert Duncan sued Defendants Shawn Garvin and the Department of Natural Resources (hereafter collectively referred to as "DNREC") in November 2020.[1] In Mr. Duncan's original complaint, he sought a declaratory judgment, sought damages for breach of contract, and petitioned for mandamus relief to declare and enforce his rights under a 2017 settlement agreement and release (hereinafter the "Settlement Agreement" or the "Agreement").[2] In August 2023, at the end of discovery, Mr. Duncan deposed a witness. The witness testified that, in November 2017, he incorrectly told Mr. Duncan's realtor and others that Mr. Duncan's environmentally contaminated commercial property ("the Site") would not qualify for Brownfields Development Program funding.[3] By the time of the representation, Mr. Duncan had contracted to sell the Site to a third-party who had a representative present at that meeting.[4] Mr. Duncan now contends that this misrepresentation prevented the third-party from closing the deal.[5]

After the August 2023 deposition, Mr. Duncan moved to add the DNREC employee who made the representation as a defendant.[6] His proposed amendments also include additional causes of action against DNREC.[7] A commissioner of this Court granted the motion to amend.[8] DNREC disagrees with the Commissioner's decision and seeks reconsideration on two grounds: (1) the alleged expiration of the statute of limitations, and (2) the alleged futility of the amendments.[9]

As discussed below, the proposed amendment to add an individual DNREC employee as a party does not relate back to the original filing. Accordingly, that

---

[1] Pl.'s Compl., D.I. 1.
[2] *Id.* at 3 – 5.
[3] Pl.'s Mot. to Am. Compl. (D.I. 73) ¶ 2.
[4] Pl.'s Second. Am. Compl. (D.I. 87) ¶ 23.
[5] I*d.* ¶ 37.
[6] D.I. 73 at 4.
[7] *Id.*
[8] Order Granting Pl.'s Mot. to Am. Compl. (D.I. 84).
[9] Def.'s Mot. for Reconsid. of Comm'r on Pl.'s Mot. to Am., D.I. 88 at ¶¶ 4, 8.

proposed amendment is barred by the applicable statute of limitation. In addition, some of Mr. Duncan's other proposed amendments are futile, and some are not. As a result, the Commissioner's order granting Mr. Duncan's motion to permit a second amended complaint must be adopted, in part, and rejected, in part.

## I.    PROCEDURAL AND FACUTAL BACKGROUND

Mr. Duncan filed his original complaint in November 2020. Thereafter, the parties sought and received two trial continuances and stipulated to several deadline extensions. At the end of discovery, DNREC identified its Director of the Division of Waste and Hazardous Substances, Timothy Ratsep ("Mr. Ratsep"), as its Superior Court Civil Rule 30(b)(6) designee. Mr. Duncan took the Rule 30(b)(6) deposition in August 2023.

Soon after the deposition, DNREC moved to amend its answer to assert standing as a defense and to allege that Mr. Duncan did not own the Site. Mr. Duncan, for his part, sought permission to file a second amended complaint to add Mr. Ratsep as a party. He also attempted to add additional causes of action and update factual allegations. There is currently no trial date pending at the joint request of the parties.

The present dispute centers on whether the Commissioner properly permitted the second amended complaint. When reviewing that decision for purposes of futility, the Court considers only the four corners of the pleading. As a result, the Court recites facts gleaned from it and the Settlement Agreement, which is integral to it.

Mr. Duncan alleges that he owns the Site, a commercial property in Harrington. He, and at least one tenant, operated a gas station on the premises. In 2000, DNREC tested the Site's soil and found it to be environmentally contaminated. Between 2000 and 2011, neither Mr. Duncan nor his then-tenant took steps to

3

remediate the property despite DNEC's repeated requests. As a result, DNREC issued a notice of violation ("NOV") to both Mr. Duncan and his tenant regarding soil and groundwater contamination. In 2014, DNREC settled with Mr. Duncan's tenant. In that agreement, DNREC released the tenant from liability in exchange for a one-time payment. Then, in 2015, DNREC took control of the property because Mr. Duncan allegedly failed to cooperate with DNREC's efforts to remediate it.

On October 18, 2017, Mr. Duncan entered the Settlement Agreement with DNREC.[10] The Agreement provided, *inter alia*, that Mr. Duncan would withdraw an Environmental Appeals Board appeal, and pay $250,000 to DNREC *upon the sale of the property*.[11] Upon that sale and DNREC's receipt of the money, DNREC agreed to withdraw the NOV and release its lien on the property.[12] DNREC also agreed to issue a no further action letter ("NFA") upon "satisfactory completion of corrective action at the Site."[13]

At some point prior to November 20, 2017, Mr. Duncan entered a contract to sell the Site to Dilek, LLC ("Dilek"). As alleged, Dilek intended to purchase the Site if it was eligible for Brownfields funding. The Brownfields Development Program provides financial assistance to potential purchasers of contaminated sites.[14] On November 20, 2017, Mr. Duncan's real estate agent met DNREC and Dilek personnel to discuss Dilek's eligibility to participate in the Program. During the meeting, DNREC personnel suggested that Mr. Duncan reduce the sales price for the Site to "reflect the work that needed to be done." Mr. Ratsep also incorrectly represented that Brownfields funds could not be used to remediate contamination on the Site. To date, Dilek has not purchased the property, and there is no allegation

---

[10] D.I. 20, Ex. A.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] 7 *Del. C*. Ch. 91, Sub. II.

that Dilek remains interested in the Site. Nevertheless, Mr. Duncan contends that Mr. Ratesp's misrepresentation and DNREC's refusal to withdraw the NOV and issue a NFA prevented Dilek from closing. In that way, Mr. Duncan contends that Mr. Ratsep intentionally interfered with the Dilek contract.

In 2020, Mr. Duncan sued DNREC alleging that DNREC breached its obligation to issue the NFA letter under the Settlement Agreement. Originally, he sought mandamus relief, a declaration that DNREC breached the Agreement, and contractual damages.[15] In response, DNREC moved to dismiss the complaint. In a June 2021 decision, the Court granted DNREC's motion, in part, by dismissing Mr. Duncan's claim for mandamus relief because he sought to enforce a discretionary decision.[16]

Discovery progressed and Mr. Duncan deposed Mr. Ratsep. During the deposition, Mr. Ratsep testified that, "[as to] the funding of what was covered and what was not covered may have— there may have been some issues or misrepresentation."[17] Mr. Duncan contends that the alleged misrepresentation was that Brownfields funds could not be used for remediation if Dilek purchased the property.[18]

Mr. Duncan then moved to amend his first amended complaint. The proposed amendments fall into three categories. First, Mr. Duncan seeks to add Mr. Ratsep as a defendant. He alleges that Mr. Ratsep is liable for negligent misrepresentation and tortious interference with Mr. Duncan's contract with Dilek. As to those causes of action, he contends that Mr. Ratsep "intentionally, recklessly, or with gross

---

[15] D.I. 1.
[16] *Duncan v. Garvin*, 2021 WL 2550656, at *3 (Del. Super. June 21, 2021).
[17] Ratsep Dep. at 224: 20-23.
[18] D.I. 87 ¶ 32.

negligence" made false representations regarding Dilek's ability to use Brownfields funds to remediate the property.[19]

Second, Mr. Duncan seeks to add *respondeat superior* claims against DNREC for negligent misrepresentation and tortious interference with contract. Mr. Duncan also includes a claim for breach of the implied covenant of good faith and fair dealing against DNREC. The factual bases for all three new causes of action against DNREC center on DNREC's refusal to issue a NFA letter and DNREC's allegedly improper exclusion of Dilek from participation in the Brownfields Program. Again, Mr. Duncan contends that DNREC took these actions to shift the financial burden for remediating the property to Mr. Duncan in violation of the Agreement.

Third, Mr. Duncan seeks to amend his recitation of facts to reflect those learned in discovery. The proposed amendments in this category relate primarily to his ownership of the Site and DNREC's alleged efforts to pressure Mr. Duncan to pay more than the amount agreed upon.

DNREC opposed Mr. Duncan's motion to amend. Following an oral argument, the Commissioner granted the motion to amend in its entirety.[20] DNREC now requests that a judge of this Court reconsider the Commissioner's decision.

## II. THE PARTIES' POSITIONS

DNREC asserts that the three-year statute of limitations for adding a party has expired. It contends that the Commissioner did not explain why she found that Mr. Duncan's claims related back. More specifically, DNREC contends that the Commissioner failed to examine the criteria in Superior Court Civil Rule 15 (c) that

---

[19] Mr. Duncan also sought to include a claim against Mr. Ratsep for negligent misrepresentation. He has since abandoned the claim because the Court of Chancery has exclusive jurisdiction over such claims.

[20] D.I. 88, Ex. B.

govern the relation back of amendments. DNREC also separately asserts that many of Mr. Duncan's claims against DNREC are futile because his pleading does not state claims upon which relief can be granted. Finally, DNREC asserts sovereign immunity as a defense against Mr. Duncan's tort claim for interference with contract.

Mr. Duncan counters that the Commissioner correctly permitted the amendments because the new claims relate back to when he filed his original complaint. He contends that his claims against Mr. Ratsep and new claims against DNREC arise from the same transaction at issue in the original complaint. He also asserts that his proposals seek to include newly discovered facts regarding how DNREC breached the Agreement – that is, by providing a more particular example of Mr. Ratsep and DNREC's efforts to sabotage Mr. Duncan's efforts to sell his property to Dilek.

As to his effort to add Mr. Ratsep as a party, Mr. Duncan asserts that the Court should presume that Mr. Ratsep knew of the original lawsuit within one-hundred twenty days of its filing because he oversaw gasoline tank remediation as the Director of the Division of Waste and Hazardous Substances. Mr. Duncan also implicitly asserts that the new claims against Mr. Ratsep relate back because he either knew or should have known that he would have been a named party in the initial suit but for a mistake of identity.

In the alternative, Mr. Duncan contends that the time of discovery rule and the doctrine of fraudulent concealment should either delay the accrual of the statute of limitations or toll it. To that end, Mr. Duncan contends that he (and inferably Dilek) had no way of knowing that Mr. Ratsep misrepresented that Brownfields funds were unavailable until Mr. Duncan deposed Mr. Ratsep in August 2023.

In response to DNREC's futility arguments, Mr. Duncan contends that sovereign immunity does not apply. He further contends that DNREC prematurely raises factual disputes in what should be a Rule 12(b)(6) inquiry.

7

Finally, Mr. Duncan concedes two matters. First, he withdraws his claim for negligent misrepresentation against both Mr. Ratsep and DNREC.[21] He concedes that the claim could have been raised only in the Court of Chancery.[22] Second, Mr. Duncan concedes in his briefing that he can maintain no tortious interference of contract claim against DNREC if Mr. Ratsep is not a party.[23]

## III. STANDARD OF REVIEW

Superior Court Civil Rule 132 grants commissioners the power to hear both case-dispositive and non case-dispositive matters. Technically, a commissioner enters an order when deciding non-case-dispositive matters.[24] Alternatively, a commissioner issues findings of fact and recommendations in case dispositive matters.[25] Following either a commissioner's order or proposed findings or recommendations, either party has ten days to file written objections to seek review by a judge.[26] The primary difference in the two mechanisms is a different standard of review. Namely, a reviewing judge considers whether there was an abuse of discretion in non case-dispositive matters.[27] The Court considers the objections of an appealing party *de novo* in case dispositive matters.[28]

---

[21] *See* D.I. 98 at 7 (withdrawing the claim for negligent misrepresentation).
[22] *See Sweetwater Point, LLC v. Kee et al*, 2020 WL 6561567, at *7 (Del. Super. Nov. 5, 2020) (citations omitted) (recognizing that the Court of Chancery has exclusive jurisdiction over negligent misrepresentation claims). Furthermore, given Mr. Duncan's voluntary withdraw of this claim, the Court deems the removal provisions of 10 *Del.C.* § 1902 inapplicable.
[23] See D.I. 98 at 11 (including Mr. Duncan's concession "that the *respondeat superior* claim against DNREC only survives if the tortious interference with contract claim against [Mr.] Ratsep survives.").
[24] Del. Super. Ct. Civ. R. 132(a)(3)(i).
[25] *Id.* 132 (a)(4)(i).
[26] *Id.* 132 (a)(3)(ii), (a)(4)(ii).
[27] *Id.* 132 (a)(3)(iv).
[28] *Id.* 132 (a)(4)(iv).

8

In this case, the line between what is case dispositive and non-case dispositive is somewhat blurred. On one hand, motions to amend pleadings are often considered non case-dispositive matters. The Court's review of Mr. Duncan's new factual allegations falls in this category. Nevertheless, a decision that grants or denies a motion to amend can have case dispositive effects if the motion permits or prohibits the addition of a new party or new substantive claims. Here, the bulk of DNREC's motion for reconsideration implicates the latter. As a consequence, the standard of review in this matter is primarily *de novo* under Rule 132(a)(4).[29]

## IV. ANALYSIS

The Court first addresses whether Mr. Duncan's claims against Mr. Ratsep relate back to his original filing. For the reasons explained below, they do not and are precluded by the statute of limitations. Furthermore, given Mr. Ratsep's absence as a party, Mr. Duncan concedes that he has no vicarious liability claim against DNREC for tortious interference with contract. Nevertheless, Mr. Duncan successfully states a claim against DNREC for a breach of the covenant of good faith and fair dealing. Finally, the Commissioner did not abuse her discretion when she permitted Mr. Duncan to amend the pleadings to include additional factual allegations.[30]

---

[29] *See id.* 132(a)(4) (including "a motion … to dismiss for failure to state a claim upon which relief can be granted" among other examples of case-dispositive matters which trigger *do novo* review of a Commissioner's order); *see also Clark v. State Farm Mutual Auto. Ins. Co.*, 131 A.3d 806, 811–12 (Del. 2016) (recognizing that review of a Superior Court decision denying a party's motion for leave to amend based upon futility should be reviewed *de novo*, as would a Rule 12(b)(6) motion).

[30] The review of the Commissioner's decision to permit factual amendments falls into the non case-dispositive category which makes the standard of review of that aspect of the Commissioner's decision one for an abuse of discretion or clear legal error.

**A. Mr. Duncan's claims against Mr. Ratsep do not relate back to the filing of the original complaint; they are barred by the statute of limitations.**

Mr. Duncan's proposed second amended complaint seeks to add Mr. Ratsep as a party liable for negligent misrepresentation and tortious interference with contract. The statute of limitation governing both claims is three years, running from the date of the alleged misrepresentation or the interference.[31] In this case, the statute for both claims began to run no later than November 20, 2017, which was the day of Mr. Ratsep's alleged misrepresentation that, in turn, allegedly interfered with the Dilek contract.

Superior Court Civil Rule 15 governs amended pleadings. The Rule memorializes the tenet that leave to amend pleadings "shall be given freely when justice so requires."[32] Accordingly, the Court exercises its discretion to liberally grant amendments *unless the amendment unfairly prejudices the other party*.[33]

The addition of a new party after the expiration of a statute of limitations falls into a category of amendments that may unfairly prejudice a party. Rule 15(c)(3) provides the requirements necessary for a proposed amendment to relate back for purposes of adding a party. These criteria balance the interests of liberally approving amendments while recognizing the need to mitigate unfair prejudice to a currently absent party.

More specifically, an amended complaint that seeks to add an additional party relates back to the original filing only when the claim arises out of the same conduct, transaction, or occurrence addressed in the original complaint, and:

> within the period provided by statute or these Rules for service of the summons and complaint, the party to be brought in by

---

[31] 10 *Del. C.* §8106.
[32] Del. Super. Ct. Civ. R. 15(a).
[33] *Farrow v. Teal Constr., Inc.*, 2020 WL 3422401 at *3 (Del. Super. June 22, 2020); *Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 263 (Del. 1993).

10

amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, *and* (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.[34]

The claims against Mr. Ratsep involve the same conduct, transaction, or occurrence set forth in the original complaint even though they assert different theories of recovery. For that reason, the Court focuses its inquiry on the criteria referenced in the block quote above. Namely, the Court must determine (1) whether Mr. Ratsep would be unfairly prejudiced in maintaining a defense on the merits if added as a party, and separately (2) whether Mr. Ratsep knew or should have known that but for a mistake concerning the identity of the proper party, Mr. Duncan would have sued him.

In this case, Mr. Duncan meets neither Rule 15(c)(3) requirement. First, Rule 15(c)(3)(A) requires that the newly added party suffer no unfair prejudice in maintaining a defense on the merits. Adding Mr. Ratsep as a party at this late stage of the litigation would unfairly prejudice him. Namely, Mr. Duncan filed the original complaint nearly four years ago. The allegedly improper conduct occurred nearly seven years ago. After two trial continuances, extensive discovery, and multiple extended discovery deadlines, the addition of Mr. Ratsep as a party would unfairly prejudice his ability to defend himself on the merits in what is already a fully developed case. It would also cause him, and the other parties, significant duplication of costs and require significant duplication of discovery.

Second, and independently, Rule 15(c)(3)(B) provides that a claim against a new party relates back only if the new party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been

---

[34] Del. Super. Ct. Civ. R. 15(c)(2) (emphasis added).

11

brought against the party."  Mr. Ratsep could not have reasonably expected to be named in a suit against DNREC for a breach of the Agreement.   Specifically, he (1) was not a party to the Agreement, and (2) had no independent obligations under the Agreement.  Moreover,  Mr. Duncan filed his original complaint on the eve of the expiration of the statute of limitations.  At that point, the suit sought only a writ of mandamus, a declaratory judgment, and contractual damages against DNREC. Those causes of action had no direct relationship to Mr. Ratsep,  a non-party to the Agreement.  While the proposed amendment involves the same transaction, when considering the allegations in the original complaint, Mr. Ratsep had no reason to suspect that Mr. Duncan mistakenly failed to add him as a party.

Alternatively, Mr. Duncan contends that the claims against Mr. Ratsep are timely because of the time of discovery rule and the doctrine of fraudulent concealment.  In Delaware, the time of discovery rule tolls the statute of limitations when an injury is "inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of."[35]  Stated differently, the time of discovery rule provides limited relief from a statute of limitations when the (1) injury is inherently unknowable, and (2) the injury is sustained by a blamelessly ignorant plaintiff.[36]  When the doctrine applies, the statute of limitations begins to run when the plaintiff has inquiry notice of the actionable claim *or* injury.[37]

Here, Mr. Duncan had knowledge of the alleged injury by no later than November 20, 2017, when DNREC allegedly pressured Mr. Duncan to pay more for corrective action than the $250,000 agreed upon in the Settlement Agreement.[38]   At

---

[35] *Lemann Bros. Hlds, Inc. v. Kee*, 268 A.3d 178, 194 (Del. 2021).
[36] *Kaufman v. C.L. McCabe & Sons, Inc.*, 603 A.2d 831, 835 (Del. 1992).
[37] *Id.*
[38] Notably, on July 9, 2018, Mr. Duncan's attorney received unequivocal notice that Dilek would not consummate the sale without the NFA letter.  D.I. 79, Ex. D.   Even when using that later date – the date Mr. Duncan had confirmed notice that Dilek would not close – the statute of limitations

12

a minimum, he was on inquiry notice of the harm at that point.[39] That inquiry notice fixed the point at which the statute of limitations began to run. As a result, his attempt to add Mr. Ratsep as a party, seven years after he admits discovering DNREC's alleged breach, is barred by the statute of limitations.

Similarly, the doctrine of fraudulent concealment does not render the attempted addition of Mr. Ratsep timely. That doctrine tolls a statute of limitations when a defendant takes affirmative action to prevent the plaintiff from gaining the knowledge necessary to bring suit.[40] It is the plaintiff who has the burden of pleading facts sufficient to demonstrate that the doctrine's tolling applies.[41] Mr. Duncan does not allege that Mr. Ratsep somehow acted affirmatively to hide his alleged misrepresentation regarding the Brownfields Program. Mr. Duncan had the ability to discover the facts necessary to support his cause of action as soon as Mr. Ratsep made the statement in November 2017 with the exercise of reasonable diligence. The doctrine of fraudulent concealment has no application here.

In summary, the portions of the second amended complaint that seek to add Mr. Ratsep as a party do not relate back to the date of the original filing. Furthermore, neither the time of discovery rule nor the doctrine of fraudulent concealment delayed the statute of limitations accrual or tolled it. As a result, the Court rejects the portion of the Commissioner's decision permitting the addition of Mr. Ratsep as a defendant.

---

on the tortious interference of contract could have possibly run no later than July 2021, more than two years before the attempted amendment.

[39] Even apart from Mr. Duncan's discovery of an injury by November 20, 2017, he contemporaneously failed to avail himself of publicly available information regarding the Brownfields Development Program. *See* D.I. 79, Ex. B (publicly listing those costs that are considered reimbursable to a Brownfields developer or a party entering into a Brownfields Development Agreement.).

[40] *Shockley v. Dyer*, 456 A.2d 798, 799 (Del. 1983).

[41] *Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, *10 (Del. Super. Feb. 15, 2013).

**B. The Court need not address DNREC's sovereign immunity defense to Mr. Duncan's tortious interference with contract claim given Mr. Duncan's concession.**

DNREC contends, and Mr. Duncan concedes, that he has no vicarious liability claim against DNREC based upon *respondeat superior* if Mr. Ratsep is not added as a party.[42] For that reason, the Court need not address whether the claim for tortious interference against DNREC is futile because of sovereign immunity or whether the allegations support a conceivable basis for recovery. The portion of the Commissioner's decision that permitted the tortious interference of contract claim against DNREC must be rejected.

**C. Mr. Duncan's breach of the implied covenant of good faith and fair dealing and the new factual allegations relate back to the original filing, state a claim upon which relief may be granted, and are not futile.**

At the outset, DNREC does not dispute that Mr. Duncan's implied covenant of good faith and fair dealing claim (hereafter referred to as his "implied covenant claim") would have been timely had he included it in his November 2020 filing. Superior Court Civil Rule 15(c)(2) provides that his proposed amendment to do so relates back to the original filing if it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The gravamen of Mr. Duncan's original complaint sought clarification regarding DNREC's obligations under the Settlement Agreement and sought to enforce DNRC's obligations through a petition for mandamus relief. Given those claims, the initial complaint focused on the Agreement and its breach. His new claim for breach of an implied covenant that arises from that same Agreement falls squarely within the same transaction. For that reason, it relates back.

---

[42] D.I. 98 at 11 (conceding that "[p]laintiff acknowledges that the *respondeat superior* claim against DNREC only survives if the tortious interference with contract claim against Ratsep survives.").

14

DNREC alternatively contends that the amendment to add an implied covenant claim should be denied as futile. A proposed amendment is futile if it would be subject to dismissal under Rule 12(b)(6) for failure to state a claim.[43]

The standard to survive a motion to dismiss for failure to state a claim or for a proposed amendment to survive a futility challenge is minimal.[44] The Court must "accept all well-pleaded factual allegations in the [c]omplaint as true[.]"[45] Delaware employs a notice pleading standard which requires that a plaintiff's allegations merely provide a defendant with notice of the nature of the claim.[46] When deciding whether a proposed amendment would be futile, the Court must draw all reasonable inferences in favor of the plaintiff. Moreover, the amendment is not futile unless the plaintiff cannot recover under any reasonably conceivable set of circumstances susceptible of proof.[47] The four corners of the second amended complaint, and any documents integral to it, define the universe of facts that the Court may consider.[48]

With that in mind, the Court turns to the elements and basis for Mr. Duncan's claim for breach of the implied covenant. To properly plead such a claim, the plaintiff must (1) allege a specific implied contractual obligation, (2) a breach of that obligation, and (3) resulting damage.[49] At a higher level, the implied covenant imposes a good faith and fair dealing obligation when a contract confers discretion on a party.[50] In that way, it serves as a limited gap filler when the contract does not specifically address an issue.[51]

---

[43] *Clark v. State Farm Mutual Auto. Ins. Co.*, 131 A.3d 806, 811–12 (Del. 2016).
[44] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC,* 27 A.3d 531, 536 (Del. 2011).
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).
[49] *Cantor Fitzgerald, L.P. v. Cantor, et al.,* 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998).
[50] *Glaxo Group Ltd. v. DRIT LP,* 248 A.3d 911, 920 (Del. 2021).
[51] *Id.* at 919.

Mr. Duncan alleges in the second amended complaint that DNREC, with ill will toward him, sought to circumvent the Agreement through Mr. Ratsep's misrepresentation regarding Brownfields funds. He further contends that DNREC did so with the intent to force Mr. Duncan to pay more than the agreed upon $250,000. The Settlement Agreement, which is integral to the pleading, includes terms requiring DNREC's withdrawal of a NOV, DNREC's release of Mr. Duncan's liability when he sells the Site, Mr. Duncan's payment of $250,000 to DNREC, and (someone's) satisfactory completion of correction action.[52] With those obligations in mind, Mr. Duncan's second amended complaint sufficiently alleges that DNREC declined in bad faith to exercise its discretion to issue an NFA. In addition, his pleading places DNREC on notice that it allegedly breached the implied covenant by refusing to exercise its discretion in good faith because it (1) did not issue an NFA letter, and (2) misrepresented that Brownfield funding would not be made available to Dilek upon purchase. Given these allegations, the claim would survive a Rule 12(b)(6) motion and is not futile. Likewise, Mr. Duncan's proposed addition of factual allegations uncovered in discovery relate back and are permissibly included in this suit. The Commissioner did not abuse her discretion when permitting them.

## V. CONCLUSION

In summary, the Commissioner's recommendations are adopted, in part, and rejected, in part. The addition of Mr. Ratsep as a party is precluded by the statute of limitations. Furthermore, the tortious interference with contract claims and negligent misrepresentation claims against DNREC are deemed withdrawn. All

---

[52] D.I. 20, Ex. A.

other proposed amendments in the second amended complaint relate back to the filing of the original complaint and are otherwise permissible.

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge